UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RANDY PITTMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-9191** |
| **SGT. DILLWORTH, ET AL.** | **SECTION: "R"(1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Randy Pittman, a state pretrial detainee, filed this *pro se* and *in forma pauperis* federal civil rights action against Sergeant Dillworth and Lieutenant Henry. In this lawsuit, plaintiff claims that he was inappropriately strip searched and falsely accused of a disciplinary violation.

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on November 2, 2017. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Based on plaintiff's complaint and Spears hearing testimony, the Court finds that he is making the following allegations in this lawsuit:

On January 1, 2017, plaintiff's cell was searched. During the search, officers found prohibited items, namely tobacco, homemade "wine," and socks with a marijuana-themed pattern.

The officers did not ask who owned the items found; however, plaintiff stated at the Spears hearing that the socks belonged to him but the tobacco and "wine" belonged to his cellmate.

During the cell search, Lieutenant Henry had plaintiff and his cellmate escorted to the shower to be strip searched. When plaintiff complained that he should be given paperwork documenting the strip search and that another ranking officer should be present for the strip search, Henry responded: "This is jail. We do what the fuck we want to y'all." Henry also told plaintiff: "Big as your ass is, you ought to be more than happy to have someone look up your ass." Sergeant Armstrong, who is not a defendant herein, then conducted plaintiff's strip search with no one else present. Although plaintiff was not touched during the strip search, he nevertheless felt that Henry's comments were improper and that the strip search should have been conducted on the open tier in view of the cameras (rather than in the shower where no cameras are located). The strip search revealed no contraband.

The following day, Sergeant Dillworth (who took no active part in the cell search) issued a disciplinary report charging plaintiff with possession of contraband and had him placed on administrative lockdown.[1] At the disciplinary hearing held five or six days later, it was determined that Dillworth's disciplinary report was "inconsistent." Therefore, the disciplinary charge was dismissed, and plaintiff was released from lockdown.

## I. Screening Standards

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

---

[1] Plaintiff's cellmate was not charged with possession of contraband based on the search.

2

redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[2]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

---

[2] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

3

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

For the following reasons, even if plaintiff's complaint is broadly construed,[3] it should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II.  Plaintiff's Claims

Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

---

[3] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

As an initial matter, the Court notes that correctional officials are given wide discretion to conduct cell searches. The United States Supreme Court has stated:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. ...
>
> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize. In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.
>
> The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. [539,] 566, 94 S.Ct. [2963,] 2979[, 41 L.Ed.2d 935 (1974)]; Hewitt v. Helms, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.
>
> ... A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S. [520,] 537, 99 S.Ct. [1861,] 1873[, 60 L.Ed.2d 447 (1979)].

Hudson v. Palmer, 468 U.S. 517, 525-28 (1984) (footnote omitted).

The same is true of body-cavity searches. For example, the Supreme Court noted that although it did not "underestimate the degree to which [body-cavity] searches may invade the personal privacy of inmates," "the significant and legitimate security interests of the institution" outweigh the inmates' privacy interests. Bell, 441 U.S. at 560. In Bell, the Court likewise observed: "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record and in other cases." Id. at 559 (citation omitted).

Accordingly, the officers had the right to conduct the searches in this case. The only question, therefore, is whether the searches were conducted in an unconstitutional manner. As to the cell search, plaintiff does not allege that the manner of the search itself violated his constitutional rights. On the other hand, he argues that the strip search was conducted inappropriately in several respects.

First, plaintiff objects to Henry's oral comments. However, it is clear that such comments, although unprofessional, simply are not actionable under federal law. "[A]llegations of verbal abuse do *not* rise to the level of a constitutional violation and may *not* serve as the basis for § 1983 claims." Randolph v. London, 400 Fed. App'x 894, 896 (5th Cir. 2010) (citing Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)); accord Reese v. Skinner, 322 Fed. App'x 381, 382 (5th Cir. 2009) (prisoner's allegations that correctional officer "participated in humiliating him" failed to state a viable claim "because verbal abuse and humiliation are not actionable under § 1983").

Second, plaintiff contends that jail policy was violated because he was refused paperwork documenting the strip search and the strip search was conducted without two ranking officers being present. He also complains that the search strip-search should have been conducted in view of the

surveillance cameras. However, while such measures would perhaps be advisable, they are not constitutionally required. Moreover, the mere fact that an official violated a jail policy is not a basis for liability under § 1983. Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009) ("A prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation.").

Lastly, as to plaintiff's claim arising from the disciplinary charge, that claim likewise fails for the following reasons.

First, although plaintiff alleges that the disciplinary report was false, that is not entirely accurate. He concedes that contraband was discovered in his shared cell, and he candidly admits that one of the items (the socks with a marijuana-themed pattern) did in fact belong to him.

Second, in any event, his claim would fail even if the charge were wholly false. The United States Fifth Circuit Court of Appeals has held that an inmate's claim that he was he was falsely accused of a disciplinary infraction "is indistinguishable from a malicious prosecution claim." Ordaz v. Martin, No. 93-4170, 1993 WL 373830, at *6 (5th Cir. Sept. 15, 1993); see also Bradley v. Hammonds, No. 97-30287, 1998 WL 699106, at *2 (5th Cir. Sept. 22, 1998). However, in 2003, the Fifth Circuit reexamined the body of law regarding malicious prosecution claims in federal civil rights actions and held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). Therefore, an inmate's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Jackson v. Mizzel, 361 Fed. App'x 622, 626 (5th Cir. 2010); Figgs v. Vrazel, 106 Fed. App'x 260, 261 (5th Cir. 2004); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *7 (E.D. La. Aug. 25, 2009).

Lastly, it should also be noted that plaintiff was afforded, and in fact prevailed at, a disciplinary hearing concerning the charge. "[T]he case law is clear that an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing." Harris v. Banks, No. 16-16906, 2017 WL 3432613, at *6 (E.D. La. June 22, 2017) (emphasis omitted), adopted, 2017 WL 3425466 (E.D. La. Aug. 9, 2017).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-ninth day of November, 2017.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**